**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VERIZON PENNSYLVANIA, LLC**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, LOCAL 13000; COMMUNCATIONS WORKERS OF AMERICA, AFL-CIO, DISTRICT 2-13**<br><br>**Defendants.** | **CIVIL ACTION NO. 18-394** |

## <u>ORDER</u>

Verizon Pennsylvania, LLC ("Verizon") filed suit under the Labor Management Relations Act against the Union Defendants seeking to vacate arbitration decisions stemming from the 2006 introduction of Verizon's FiOS TV product to customers in Pennsylvania. The product requires installation of a set-top box, a device that customers use to select content and change the channel on the television. Customers could choose either to have the set-top box delivered and installed by Verizon employees or to install the box themselves. Customers who elected to self-install could pick up the boxes from Verizon or receive them through delivery by common carrier.

Pursuant to the applicable Collective Bargaining Agreement ("CBA") between the parties, the Union filed a grievance in 2008 asserting that Verizon violated the CBA by offering this self-installation program. The parties were unable to resolve the grievance and the Union demanded arbitration. After considerable delay, the dispute was heard by a three-member Arbitration Panel that comprised one arbitrator selected by each party and a neutral arbitrator.

In 2016, the Panel issued an award on the merits of the dispute (the "Merits Award"). The Panel concluded that Verizon did not violate the CBA by allowing customers to install the set-top boxes themselves but found that it did violate the CBA when it contracted with common carriers to deliver the set-top boxes to customers. The Panel directed Verizon to cease and desist from delivery by anyone other than Union members and directed the parties to attempt to come to an agreement on the remedy.[1] The Verizon-selected arbitrator dissented.

When the parties could not agree on a remedy, the Panel issued an award on January 22, 2018 (the "Remedy Award"). The Panel determined in the Remedy Award that Verizon violated the CBA by allowing customers to install the set-top boxes unless the customers picked up the boxes themselves. The Panel also specified that delivery of the set-top boxes had to be performed by Service Technicians and imposed a monetary remedy. The Verizon-selected arbitrator again dissented.

Verizon then filed this action seeking to vacate the Merits and Remedy Awards, asserting: the doctrine of *functus officio*, manifest disregard of the CBA, invalid punitive damages, arbitrator bias, and laches. The Union has moved to dismiss the complaint and for confirmation of the Merits Award and Remedy Award; Verizon opposes the motion and requests a schedule leading to summary judgment motions.

*Functus Officio*

Under the common-law doctrine of *functus officio*, the arbitrators cannot revisit the merits of an arbitration award once it has issued.[2] There are three limitations to the doctrine: "(1)

---

[1] Verizon then filed a lawsuit seeking to vacate the Merits Award, which was dismissed as premature under the "complete arbitration rule" because the Panel had not ruled on a remedy. *Verizon Pa. LLC v. CWA Local 13000*, 216 F. Supp. 3d 530, 533 (E.D. Pa. 2016).

[2] *Office & Prof'l Emps. Int'l Union, Local No. 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 331 (3d Cir. 1999) (internal citation omitted).

an arbitrator can correct a mistake which is apparent on the face of his award; (2) where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination; and (3) where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify."[3] The Union argues that the Panel retained jurisdiction in the Merits Award to resolve the question of the appropriate monetary remedy, and that to calculate this amount, the Panel had to determine the unresolved question of who had been harmed by Verizon's self-installation program.[4] However, Verizon has alleged that the Panel had determined conclusively in the Merits Award that the self-installation did not amount to contracting out bargaining unit work and that only delivery of the set-top boxes by non-Union members violated the CBA,[5] that the formula for a monetary remedy was how often Verizon delivered set-top boxes to existing customers who did not want to install it themselves, and that the only issue properly left to the Remedy Award was the amount of the remedy.[6] The Union has not established as a matter of law that the Remedy Award did not improperly revisit aspects of the Merits Award, or that the Merits Award was not final for purposes of the doctrine, and the motion to dismiss this claim will be denied.

*Manifest Disregard*

Federal courts are "extremely deferential" to arbitrators' decisions.[7] However, an award may be vacated if an arbitrator demonstrates manifest disregard for the collective bargaining

---

[3] *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3d Cir. 1991) (internal quotation marks, brackets, and citations omitted).

[4] Reply to Mem. in Opp'n to Mot. to Dismiss [Doc. No. 15] at 1-2.

[5] Compl. ¶¶ 32-33.

[6] *Id.* ¶ 34.

[7] *Metromedia Energy, Inc. v. Enserch Energy Servs.*, 409 F.3d 574, 578 (3d Cir. 2005) (citation omitted).

agreement, such that the award cannot "in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention."[8] Verizon alleges that the Panel manifestly disregarded the CBA when it determined that a "set top box is a communications facility that is owned, operated and maintained by the Company,"[9] because, according to Verizon, the set-top boxes are owned by Verizon Online LLC, a separate entity.[10] Although the Union alleges in its reply brief that Verizon Online LLC was created merely to evade the CBA, this issue cannot be determined on a motion to dismiss.[11] The Court therefore will determine all issues concerning the claim of manifest disregard at summary judgment.

*Punitive Damages*

An arbitrator may only award punitive damages when the terms of the CBA expressly authorize it.[12] The Union argues that the Remedy Award is compensatory in nature, not punitive, as the Panel awarded compensation for lost overtime work opportunities at a straight time rate; yet the Union also concedes that the Panel recognized that Union members "did not lose income as they were fully employed at the time."[13] Verizon thus has stated a claim that the Remedy Award constitutes an impermissible award of punitive damages.

---

[8] *Akers Nat'l Roll Co. v. United Steel, Paper, & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 712 F.3d 155, 160 (3d Cir. 2013) (citing *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969)).

[9] Compl. ¶ 57.

[10] Compl. ¶ 20.

[11] Reply to Mem. in Opp'n to Mot. to Dismiss [Doc. No. 15] at 5–6.

[12] *Coll. Hall Fashions, Inc. v. Phila. Joint. Bd. Amalgamated Clothing Workers of Am.*, 408 F. Supp. 722, 727 (E.D. Pa. 1976) (citation omitted); *see also CBS, Inc. v. Local Union No. 1241, Int'l Bhd. of Elec. Workers*, No. 86-1043, 1986 WL 11469, at *1 (E.D. Pa. Oct. 15, 1986) (recognizing that the law proscribes punitive damages not expressly authorized by the CBA).

[13] Mot. to Dismiss [Doc. No. 10] at 13 (citing Ex. C).

*Arbitrator Bias*

An arbitration award may be vacated "where there was evident partiality or corruption in the arbitrators."[14] Verizon alleges that the neutral arbitrator "made several statements and undertook actions during the remedy proceedings that suggest bias against" Verizon.[15] The Union argues that Verizon has waived this challenge by waiting until after the Remedy Award was issued.[16] It is not clear from the complaint when Verizon learned of the alleged bias, but it appears that the allegedly biased comments were made during the remedy proceedings. At this early stage, and without the full context, the Court cannot determine whether the arbitrator exhibited bias and whether Verizon waived any challenge to the arbitrator either in whole or in part (e.g., whether the claim may have been waived as to the Remedy Award but not as to the Merits Award).[17]

*Laches*

Finally, Verizon alleges that the Union engaged in unjustifiable delay by waiting six years between the demand for arbitration and the commencement of proceedings; a delay entirely within the Union's control. As the Union argues, the Panel considered and rejected the laches defense,[18] but Verizon contends that the Panel wrongly found that Verizon was not prejudiced because it had notice of the request for arbitration and that Verizon had "made no

---

[14] 9 U.S.C. § 10(a)(2) (2012).

[15] Compl. ¶ 48.

[16] In *Goldman Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F.3d 144 (3d Cir. 2015), an investor challenged an adverse arbitration because one of the arbitrators had failed to disclose past instances of unauthorized practice of law and other fraudulent acts. The Third Circuit held that a party waives a claim of arbitrator partiality when challenging an award on those grounds when it "could have reasonably discovered that any type of malfeasance…was afoot during the hearings." *Id.* at 149.

[17] *See id.* (holding that constructive knowledge "both encourages parties to conduct adequate due diligence prior to issuance of the award and promotes the arbitration goals of efficiency and finality" and "prevents the losing party from receiving a second bite at the apple.") (citation omitted).

[18] Compl., Ex. C (Remedy Award) at 11-12.

5

effort to speed up" the case.[19] Verizon has stated a claim that the Panel manifestly disregarded the law by ruling only on Verizon's duties, and not the Union's duty to timely move the dispute to arbitration.[20]

**AND NOW**, this 6th day of February 2019, upon consideration of the Motion to Dismiss [Doc. No. 10] and the responses and replies thereto, and for the reasons stated in this Order, it is hereby **ORDERED** that the Motion is **DENIED**. It is further **ORDERED** that Defendants shall answer the Complaint within 21 days, and that no later than **March 1, 2019**, the parties shall submit a joint proposed schedule for the case.

It is so **ORDERED**.

**BY THE COURT:**

**/s/ Cynthia M. Rufe**

_____

**CYNTHIA M. RUFE, J.**

---

[19] *Id.*

[20] *Waddell v. Small Tube Prods., Inc.*, 799 F.2d 69, 76 (3d Cir. 1986) (holding that "even though another party may have contributed to the delay, the court still must determine whether plaintiff's own delay or inaction was inexcusable").