## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VERIZON PENNSYLVANIA LLC.** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.  18-394** |
| | : | |
| **COMMUNICATIONS WORKERS OF** | : | |
| **AMERICA, AFL-CIO, LOCAL 1300, et al.** | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                         **March 30, 2020**

Plaintiff Verizon Pennsylvania LLC filed suit pursuant to Section 301 of the Labor

Management Relations Act[1] against Communications Workers of America, AFL–CIO, Local

13000 and District 2–13 ("Union" or "CWA") seeking to vacate the award issued by the majority

of a tripartite arbitration board. Both Verizon and the Union now move for summary judgment.

For the reasons that follow, both motions will be granted in part and denied in part, and the

award will be vacated and remanded to the arbitration board for a new calculation of remedies.

## I.    BACKGROUND

Since 1943, Verizon and CWA have entered into successive Collective Bargaining

Agreements ("CBA") that set forth the terms and conditions of employment for Verizon

employees in Pennsylvania. The CBA that applies to this matter was in effect from 2003-2008.

Section 17.01 of the CBA provides that "[t]he Company will maintain its established policies as

to the assignment of work in connection with the installation and maintenance of

---

[1] 29 U.S.C. § 185.

communications facilities owned, maintained and operated by the Company."[2] The CBA also includes a grievance and arbitration procedure to resolve disputes between the parties.

In late 2006, Verizon began offering "FiOS TV." To receive FiOS TV, a customer must have a set top box connected to their television. How the set top boxes reached customers' homes and who installed them is at the heart of this case. Initially, either Verizon Service Technicians[3]—members of the Union—delivered and installed the set top boxes or customers picked up a set top box from a local service center and installed it themselves.[4] In 2007, Verizon introduced a new option: delivery by a common carrier such as UPS with the customer then installing the box.

In 2008, the CWA filed a grievance contesting this new option, alleging that Verizon's change in the established work practice for the delivery and installation of set top boxes violated Section 17.01 of the CBA. The parties were unable to resolve the issue through the grievance process, and the dispute was submitted to a tripartite arbitration board composed of arbitrators Barbara Zausner (Neutral Arbitrator), Paul LoConte (Company Arbitrator), and Michael Davis (Union Arbitrator). The Panel held a hearing in December 2015 and in July 2016 Zausner issued an Opinion and Award ("Merits Award"). Davis concurred in the Merits Award, while LoConte dissented. In the Merits Award, the Panel directed Verizon to cease and desist from delivering set top boxes to customers by anyone other than a member of the bargaining unit, referred the issue of remedies back to the parties, and retained jurisdiction in case the parties could not agree on a monetary remedy.[5]

---

[2] CBA as amended Aug. 3, 2003 [Doc. No. 26-6] at 35.

[3] The record is inconsistent as to whether this job title is Service Technician or Services Technician.

[4] Opinion and Award ("Merits Award") [Doc. No. 26-7] at 2.

[5] Merits Award at 25.

Verizon then filed suit seeking to vacate the award.[6] Because the award was not complete, the Honorable Gerald J. Pappert granted the Union's motion to dismiss without prejudice.[7] Verizon then ceased delivering set top boxes to Pennsylvania customers by common carrier. However, instead of returning delivery duties to Service Technicians, Verizon created a new position, titled Assistant Technician, to perform deliveries for customer self-installation. The Assistant Technicians were members of the bargaining unit.

The Union and Verizon were unable to reach an agreement on the monetary remedy. Therefore, following briefs and hearings on the matter, the Panel issued a Supplemental Award setting forth the remedy ("Remedy Award").[8] The Remedy Award directed Verizon to return the delivery, installation, and maintenance of set top boxes, except where a customer picks up the box, to the Service Technicians.[9] The Remedy Award further issued a monetary remedy based on the number of set top box shipments and deliveries, other than those performed by customers, to be calculated at the non-overtime rate of two hours per delivery at the top step wage rate.[10]

Verizon then filed this action seeking to vacate the Merits and Remedy Awards, asserting laches; manifest disregard of the CBA; arbitrator bias; invalid punitive damages; and the doctrine of *functus officio*. After the Union's motion to dismiss was denied, the Union answered the Complaint and asserted a counterclaim for confirmation of the Awards. Both parties have now filed motions for summary judgment.

---

[6] *See Verizon Pa. LLC v. Commc'ns Workers of Am.*, 216 F. Supp. 3d 530 (E.D. Pa. 2016).

[7] *See id.* at 531.

[8] Supplemental Award on the Remedy ("Remedy Award") [Doc. No. 26-11]. Craig Brewster replaced LoConte as Company Arbitrator, and dissented from the Remedy Award. *See id.* at 1.

[9] *Id.* at 12.

[10] *Id.* at 12–13.

## II.     LEGAL STANDARD

"[F]ederal labor law elevates labor arbitrators 'to an exalted status,'"[11] and, thus, "[t]he United States Supreme Court has consistently held that courts exercise a narrow and deferential role in reviewing arbitration awards arising from labor disputes."[12] "The rationale for this limited role is to encourage the arbitration of labor disputes and not undermine them by excessive court intervention on the merits of an award."[13] "In light of this policy of encouraging arbitration awards . . . [a] court must uphold an award that 'draws its essence from the collective bargaining agreement.'"[14] "An award draws its essence from a collective bargaining agreement if its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention."[15] "The Supreme Court has phrased the same idea in this fashion: 'if an arbitrator is even arguably construing or applying the contract and acting within the scope of [her] authority, the fact that a court is convinced [she] committed serious error does not suffice to overturn [her] decision.'"[16] Therefore, a court should not "vacate an award simply because [it] would have reached the opposite conclusion had [it] been the original arbitrator."[17]  "Rather, an award should only be vacated if there is no support in

---

[11] *AmeriSteel Corp. v. Int'l Bhd. of Teamsters*, 267 F.3d 264, 276 (3d Cir. 2001) (quoting *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1126 (3d Cir. 1969)).

[12] *Accuride Erie, L.P. v. Int'l Union, Auto., Aerospace & Agric. Implement Workers of Am., Local Union 1186*, 257 F. App'x 574, 578 (3d Cir. 2007) (citations omitted).

[13] *Id.* (citations omitted).

[14] *Id.* (quoting *United Steelworkers of Am. v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960)).

[15] *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (citing *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379–80 (3d Cir. 1995)); *see also AmeriSteel Corp.*, 267 F.3d at 276 ("[A]n arbitration award must be enforced as long as the arbitrator has *arguably* construed or applied the contract.") (cleaned up).

[16] *Akers Nat'l Roll Co. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 712 F.3d 155, 160 (3d Cir. 2013) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).

[17] *Accuride Erie*, 257 F. App'x at 578 (citing *Citgo Asphalt Refining Co. v. Paper, Allied–Indus., Chem. & Energy Workers Int'l Union Local No. 2–991*, 385 F.3d 809, 816 (3d Cir. 2004)).

the record for the arbitrator's determination or if the arbitrator demonstrates a manifest disregard for the agreement entirely unsupported by principles of contract construction."[18]

## III. DISCUSSION

### A. Laches

Verizon raised laches as a defense in the arbitration proceedings. The Panel explained that "[t]he Company's laches defense is based upon the fact that after April 7, 2008, when the 'Union issued a timely arbitration demand' 'the grievance sat for'" over seven years even though "[t]he Union controls which cases are scheduled for arbitration."[19] The laches defense was rejected, however, both because the filing of the grievance put Verizon on notice that the Union viewed its practices as violating the agreement and because Verizon made no effort to speed up the case.[20]

Verizon now reasserts the defense of laches and argues that the Panel's dismissal of the defense should be vacated because the "refusal to apply laches to this case rested on fundamental errors."[21] However, as the Union argues, the Supreme Court explained in *Howsam v. Dean Witter Reynolds, Inc.* that "whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide," not the Court.[22]

In response, Verizon asserts that the Supreme Court's rule is only that the "application of laches is presumptively for the arbitrator in the first instance, not that the arbitrator's ruling is

---

[18] *Id.* (citing *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993)).

[19] Remedy Award at 9.

[20] *See id.* at 11–12.

[21] Verizon's Memorandum in Support of its Motion for Summary Judgment [Doc. No. 26-16] at 23.

[22] 537 U.S. 79, 84 (2002) (internal quotation marks and citation omitted; emphasis omitted); *see also Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 183 (3d Cir. 2010) (quoting *Howsam*, 537 U.S. at 84).

exempt from court review."[23] Verizon relies on *Teamsters Local 312 v. Matlack, Inc.*,[24] a pre-*Howsam* case in which the Third Circuit explained that "[p]rocedural irregularities . . . may also result in such fundamental unfairness as to warrant the vacation of an arbitral award."[25] However, a procedural irregularity is a "type of procedural error that undermine[s] the validity of the arbitration process,"[26] such as when an arbitrator bases a decision on findings from a different arbitration proceeding, arbitrarily applies evidentiary rules, fails to include the rest of the panel in the decision, or mistakenly makes a decision before a party has a chance to present arguments and evidence.[27] Here, Verizon merely disagrees with the Panel's articulated basis for dismissing the laches defense—there is no indication of the kind of procedural irregularity that impeded Verizon's "right to notice and opportunity to be heard."[28] Therefore, because the Supreme Court has held that the defense of laches is "presumptively not for the judge," Verizon's laches claim will be denied.

### B.  Manifest Disregard

The parties specified in the CBA are Verizon Pennsylvania Inc. and Verizon Services Corp. ("Company") and the CWA.[29] Section 17.01 of the CBA applies to "communications facilities owned, maintained and operated by the Company."[30] The set top boxes are owned by

---

[23] Verizon's Opposition to the Union's Motion for Summary Judgment [Doc. No. 29] at 23.

[24] 118 F.3d 985, 995 (3d Cir. 1997).

[25] *Matlack*, 118 F.3d at 995 (citations omitted).

[26] *Id.* at 996 (internal quotation and citation omitted).

[27] *See id.* at 995–96 (collecting cases).

[28] *Id.* at 996 (citation omitted). Verizon also relies on *Dairy Emps. Union Local 17 v. Anema,* No. 16-96, 2016 BL 376556, at *3–7 (C.D. Cal. Nov. 10, 2016), for its contention that the Court can review the arbitrator's laches decision. However, the court in *Anema* was applying the wholly different legal standard applicable to cases arising under the Multiemployer Pension Plan Amendments Act, under which mixed questions of law and fact are reviewed *de novo. See id.* at *3.

[29] CBA as amended Aug. 3, 2003 [Doc. No. 26-6] at 1.

[30] Merits Award at 2.

Verizon Online, "a wholly owned subsidiary of Verizon."[31] At the arbitration hearing, Verizon

argued that it did not own the set top boxes, and therefore, Section 17.01 did not apply to its

policies regarding the boxes. The Panel held that "the evidence is to the contrary" because:

> The boxes, with a Company logo on them, are sent out to customers at the
> Company's direction. The customer, who pays rent to the Company for use of the
> box, does not own the set top box. Neither does the vendor, who is compensated
> by the Company for the cost of mailing the boxes.[32]

Verizon now argues that the Panel acted with manifest disregard for the CBA in holding that

Section 17.01 applies to work related to the set top boxes.

However, "if an arbitrator is even arguably construing or applying the contract and acting

within the scope of [her] authority, the fact that a court is convinced [she] committed serious

error does not suffice to overturn [her] decision."[33] The Panel interpreted Section 17.01's use of

the phrase "communications facilities owned, maintained and operated by the Company" to

include communications facilities that Verizon owns in all but name. In other words, the Panel

determined that Section 17.01 does not allow Verizon to circumvent the CBA by placing the set

top boxes under ownership of a wholly owned subsidiary when Verizon functionally owns the

communications facility—the set top boxes have Verizon's logo on them, Verizon controls when

customers receive them, customers pay rent to Verizon, and Verizon credits the shipping costs.

Whether the Court agrees with this construction of Section 17.01 is of no import because "[i]t is

the arbitrator's construction which was bargained for; and so far as the arbitrator's decision

concerns construction of the contract, the courts have no business overruling [her] because their

---

[31] *Id.* at 8.

[32] *Id.* at 20–21.

[33] *Akers*, 712 F.3d at 160 (quoting *Garvey*, 532 U.S. at 509).

interpretation is different from [hers]."[34] Verizon accepted the risk of arbitration and cannot now avoid its result.[35]

### C. Arbitrator Bias

"An arbitration award may be set aside where there is an adequate showing of fraud, partiality, misconduct, violation of a specific command of law, or showing that enforcement would be contrary to public policy."[36] "In order to show evident partiality, the challenging party must show a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration."[37] "'Evident partiality' is strong language and requires proof of circumstances powerfully suggestive of bias."[38] "Courts rarely vacate arbitrator's awards for arbitrator partiality, especially after the arbitration award has been entered."[39]

Verizon argues that two incidents establish that Arbitrator Zausner was biased in favor of the Union.[40] First, during a break in a hearing regarding the Remedy Award, Verizon witness Gregory Bream remained in the hearing room and allegedly overheard Zausner say "words to the effect that large companies always screw over the little guy."[41] Second, Craig Brewster, the

---

[34] *Id.* at 161 (quoting *United Steelworkers*, 363 U.S. at 599).

[35] Verizon also argues that the Remedy Award manifestly disregarded the CBA in ruling that customer self-installation violates the CBA. However, because the Court holds that the doctrine of *functus officio* barred this holding, the Court will not issue an advisory decision on this issue.

[36] *Gateway Funding Diversified Mortg. Servs., L.P. v. Field*, No. 04-4428, 2008 WL 2758877, at *6 (E.D. Pa. July 10, 2008) (citing *Matlack*, 118 F.3d at 995).

[37] *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1523 n.30 (3d Cir. 1994) (internal quotation marks and citation omitted), *aff'd*, 514 U.S. 938 (1995); *see also Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 253 (3d Cir. 2013).

[38] *Kaplan*, 19 F.3d at 1523 n.30 (internal quotations and citation omitted).

[39] *Lex v. Weinar*, No. 13-96, 2015 WL 1455810, at *3 n.4 (E.D. Pa. Mar. 31, 2015) (citation omitted).

[40] Verizon is entitled to present information not in the arbitral record, because "[s]uch matters as misconduct or bias of the arbitrators cannot be gauged on the face of the arbitral record alone." *Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d 541, 543 (5th Cir. 1987).

[41] Verizon's Motion for Summary Judgment, Ex. L [Doc. No. 26-13] at 29.

8

Director of Labor Relations for Verizon and Verizon's appointed arbitrator, testified that during an internal arbitration board meeting "Arbitrator Zausner said something along the lines of the Company just wants to get this award so that they can challenge it in court."[42] Thus, Verizon asserts that "Arbitrator Zausner was predisposed to rule against the Company because it is a large corporation, and because it previously filed a complaint asking this Court to vacate the Merits Award."[43]

The Union asserts that Verizon waived this claim by failing to raise it during the arbitration proceedings. In *Goldman, Sachs & Co. v. Athena Venture Partners, L.P.*, the Third Circuit "decide[d] how waiver applies in the arbitration context."[44] The court explained that "many circuits generally agree that a party waives a claim based on the conduct of an arbitrator if the party fails to raise those concerns prior to or during the arbitration hearings."[45] The court then adopted a "constructive knowledge" standard and explained that a "party should not be permitted to game the system by rolling the dice on whether to raise the challenge during the proceedings or wait until it loses to seek vacatur on the issue."[46] Therefore, the Court of Appeals concluded that "if a party could have reasonably discovered that any type of malfeasance, ranging from conflicts-of-interest to non-disclosures . . . was afoot during the hearings, it should be precluded from challenging the subsequent award on those grounds."[47]

The alleged statements were made during the hearings, and thus Verizon was required to raise the issue at the time. Verizon argues that raising the claim in arbitration would have

---

[42] Verizon's Motion for Summary Judgment, Ex. N [Doc. No. 26-15] at 1.

[43] Verizon's Memorandum of Law in Support of Motion for Summary Judgment [Doc. No. 26-16] at 20.

[44] 803 F.3d 144, 147 (3d Cir. 2015).

[45] *Id.* at 147.

[46] *Id.* at 150.

[47] *Id.* at 149.

"inflamed Arbitrator Zausner's bias further – and risked an even more unfairly prejudicial outcome" and because it "understood that Arbitrator Zausner was an experienced mediator and held out hope that she would not let her own personal biases influence her decision."[48] The Third Circuit squarely rejected this rationale, explaining that "[t]his is the paradigmatic case of the 'sore loser,' so to speak, trying for a second bite at the apple—and the exact type of case the law disfavors."[49] Therefore, Verizon waived this claim.[50]

Even if the claim were not waived, Verizon has not shown "evident partiality."[51] With regard to the allegation that Zausner, in a "social conversation," was overheard saying "words to the effect that large companies always screw over the little guy," Bream stated that he was only "half listening" and "did not hear any of the words before or after the statement."[52] There is no indication that Zausner was talking about Verizon or that she even agreed with the statement.[53] In fact, Edward Mooney, the person with whom Zausner was conversing, testified that the conversation "was just small talk and was completely unrelated to the arbitration hearing or the

---

[48] Verizon's Memorandum of Law in Support of Motion for Summary Judgment [Doc. No. 26-16] at 21.

[49] *Goldman, Sachs & Co.*, 803 F.3d at 150.

[50] Verizon also argues that because it only became aware of the alleged bias during the Remedy Award proceedings, it did not waive its bias challenge as to the Merits Award which was no longer alterable under the doctrine of *functus officio*. *See* Verizon's Memorandum of Law in Support of Motion for Summary Judgment [Doc. No. 26-16] at 21. Moreover, Verizon asserts that if the Merits Award is vacated due to bias, the Remedy Award must necessarily be vacated because there can be no remedy without a finding of liability. *See id.* However, Verizon cites no support for this proposition that a waiver should be furcated so finely. The Remedy Award and Merits Award were part of the same arbitration, *see Verizon Pa.*, 216 F. Supp. 3d at 534–35, and the Third Circuit has held that parties cannot fail to raise bias claims during the arbitration proceedings and then take a "second bite at the apple" in court. *Goldman, Sachs & Co.*, 803 F.3d at 150. Verizon's theory would require courts to parse arbitration proceedings for the exact moment that a party becomes aware, or should have become aware, of a waivable issue during the proceedings, and then determine which issues were barred by *functus officio* at that exact moment. Such a rule is directly opposed to the Third Circuit's explanation for the waiver rule as "promot[ing] the arbitration goals of efficiency and finality." *Id.* at 149.

[51] *Kaplan*, 19 F.3d at 1523 n.30.

[52] Union's Motion for Summary Judgment, Ex. D [Doc. No. 25-6] at 33–34.

[53] *See Strohmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters*, 969 F.2d 1436, 1446 (3d Cir. 1992) (explaining that arbitrator's comments cannot be taken "out of context and exaggerated" to show bias.).

Parties."[54] Therefore, the isolated statement that Bream allegedly heard is not "powerfully suggestive of [Zausner's] bias" against Verizon.[55]

Zausner's alleged statement that the "Company just wants to get this award so that they can challenge it in court" merely made note of the fact that Verizon had already attempted to appeal the Merits Award but had been required to wait until the arbitration was finalized, and correctly predicted that Verizon would appeal the award once the Panel issued a final award.[56] Although the statement may express annoyance, a reasonable person would not conclude from it that Zausner was substantively biased.

### D.  Punitive Damages

Verizon also argues that the Remedy Award constituted punitive damages which were not authorized by the CBA.[57] The Supreme Court has explained that "[c]ompensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct [while] punitive damages serve a broader function; they are aimed at deterrence and retribution."[58] In the labor arbitration context, "[f]or the damage award to be

---

[54] Union's Motion for Summary Judgment, Ex. A [Doc. No. 25-3] at 2. Mooney is the Vice President of the CWA.

[55] *Kaplan*, 19 F.3d at 1523 n.30.

[56] *Verizon Pa.*, 216 F. Supp. 3d at 535.

[57] Although the Third Circuit has not expressly held that punitive damages cannot be awarded in arbitration, numerous courts have explained that an award of punitive damages does not draw its essence from the CBA in the absence of an explicit provision allowing such damages in the CBA. *See CBS, Inc. v. Local Union No. 1241, Int'l Bhd. of Elec. Workers*, No. 86-1043, 1986 WL 11469, at *3 (E.D. Pa. Oct. 15, 1986), *aff'd*, 829 F.2d 30 (3d Cir. 1987); *Island Creek Coal Co. v. Dist. 28, United Mine Workers of Am.*, 29 F.3d 126, 129 (4th Cir. 1994); *United Elec., Radio & Mach. Workers of Am., Local 1139 v. Litton Microwave Cooking Prod., Litton Sys., Inc.*, 704 F.2d 393, 395 (8th Cir. 1983); *Desert Palace, Inc. v. Local Joint Exec. Bd. of Las Vegas*, 679 F.2d 789, 794 (9th Cir. 1982); *Bacardi Corp. v. Congreso de Uniones Industriales de P.R.*, 692 F.2d 210, 214 (1st Cir. 1982). This is especially true in the labor arbitration context because "the award of punitive damages in the midst of a steady stream of arbitrations between a company and its unions might well undercut both sides' confidence in the arbitration process and decrease their commitment to this essential aspect of 'industrial self-government.'" *Raytheon Co. v. Automated Bus. Sys., Inc.*, 882 F.2d 6, 10 (1st Cir. 1989) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580 (1960)). Moreover, the Union only argues that the remedy was compensatory, not that an award of punitive damages would be allowed.

[58] *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (internal quotation and citations omitted).

validly compensatory, there must be a causal relationship between the Company's breach of the Agreement and the loss claimed by the Union."[59] "Ordinarily, an award that exceeds the monetary loss which an injured party suffered as a result of a contract breach is considered punitive."[60] Thus, when an arbitration board does not find that employees "lost anything by reason of the Company's violation . . . monetary relief ordered by the Arbitration Board must be considered punitive."[61]

Here, as Verizon argues, the Panel determined that "the grievants (Service Technicians) did not lose income as they were fully employed at the time."[62] Nonetheless, the Panel granted the Union a monetary award to "compensate these employees and to deter future violations of Article 17.01."[63] In the absence of lost income, however, the award cannot have been compensatory.[64] Moreover, the Panel explicitly provided that the award was punitive, with a stated purpose to deter future violations of the CBA.[65]

The Union argues that the award was compensatory because "the Arbitration Board specifically found that the Services Technicians 'lost work,' and therefore, a monetary remedy was required to 'compensate' the Services Technicians for their lost work opportunities."[66] However, as Verizon asserts, this determination was a response to Verizon's argument that it had

---

[59] *Georgia Power Co. v. Int'l Bhd. of Elec. Workers, Local 84*, 995 F.2d 1030, 1032 (11th Cir. 1993) (citing *Desert Palace*, 679 F.2d at 794).

[60] *Desert Palace*, 679 F.2d at 794 (quoting *Westinghouse Electric Corp., Aerospace Division v. IBEW Local 1805*, 561 F.2d 521, 523–24 (4th Cir. 1977)).

[61] *Georgia Power*, 995 F.2d at 1032.

[62] Remedy Award at 11.

[63] *Id.* at 12.

[64] *See Desert Palace*, 679 F.2d at 794; *Georgia Power*, 995 F.2d at 1032.

[65] *See State Farm*, 538 U.S. at 416.

[66] Union's Brief in Opposition to Verizon's Motion for Summary Judgment [Doc. No. 28] at 15 (quoting Remedy Award at 11–12).

complied with the injunction issued in the Merits Award by using Assistant Technicians to deliver the set top boxes. When the Panel stated that the Service Technicians "lost work," it meant that Service Technicians, rather than Assistant Technicians, were entitled to perform deliveries of set top boxes under Section 17.01—not that Service Technicians lost any money.[67]

The Union also argues that arbitrators are entitled to "flexibility in meeting a wide variety of situations"[68] when fashioning a remedy and that "[w]hile Services Technicians receive a guaranteed base wage of forty hours per week, Verizon did not dispute the Union's contention that the Service Technicians could have performed the disputed work on overtime."[69] However, the Remedy Award did not determine that there was lost overtime. Instead, the Panel explicitly determined that the Service Technicians "did not lose income."[70]

This is a "rare situation where not even [the] heavy degree of deference to arbitrators can save an arbitration decision and award."[71] "[A]n arbitrator's authority sources from the CBA itself,"[72] and an arbitration award does not draw its essence from the CBA when an arbitrator grants an award of punitive damages in the absence of an express provision in the CBA allowing such an award. While "[t]he bar may be low to uphold an arbitration award,"[73] the Remedy

---

[67] The Remedy Award does not fully explain how the Service Technicians could lose work to the Assistant Technicians without losing any income. One possible explanation is the contract language that "guarantees full time work to all Services Technicians." Remedy Award at 5. Moreover, even if the Service Technicians did lose some income as a result of Verizon's breach of the CBA, an award that exceeded that monetary loss would constitute punitive damages—especially where the Panel explained that the purpose was deterrence. *See Desert Palace*, 679 F.2d at 794.

[68] Union's Brief in Support of Motion for Summary Judgment [Doc. No. 25-1] at 22 (quoting *PPL Servs. Corp. v. IBEW, Local 1600*, 2012 U.S. Dist. Lexis 170075, *24 (E.D. Pa. Nov. 29, 2012)).

[69] *Id.*

[70] Remedy Award at 11. Moreover, the Panel's decision not to award pay at overtime rates indicates that it did not determine that the Service Technician lost overtime work.

[71] *Monongahela Valley Hosp. Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195, 197 (3d Cir. 2019).

[72] *Id.* at 200.

[73] *Id.* at 201.

Award clearly explained that it was intended to "deter future violations of Article 17.01."[74] The Court will not "'rubber stamp' an arbitrator's decision"[75] that explicitly awarded damages for the purpose of deterrence when such damages are not authorized under the CBA. Therefore, the Remedy Award must be vacated.

### E.   *Functus Officio*[76]

"*Functus officio* (Latin for 'a task performed') is a shorthand term for a common-law doctrine barring an arbitrator from revisiting the merits of an award once it has issued."[77] "The doctrine is motivated by a perception that arbitrators, lacking the institutional protection of judges, may be more susceptible to outside influences pressuring for a different outcome and also by the practical concern that the ad hoc nature of arbitral tribunals makes them less amenable to re-convening than a court."[78] "Although the doctrine was applied strictly at common law . . . 'the federal courts have been less strict in applying the [doctrine] in reviewing labor disputes.'"[79]

---

[74] Remedy Award at 12.

[75] *Monongahela*, 946 F.3d at 199 (quoting *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 861 (3d Cir. 2016)).

[76] The issue of whether the Panel violated the doctrine of *functus officio* only applies to the Remedy Award, which already must be vacated based on the improper award of punitive damages. However, for the sake of completeness, the Court will address the arguments made.

[77] *Office & Prof'l Employees Int'l Union, Local No. 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 331 (3d Cir. 1999) (citing *Matlack,* 118 F.3d at 991).

[78] *Id.* (citing *Matlack*, 118 F.3d at 991).

[79] *Id.* (quoting *Matlack*, 118 F.3d at 991). In fact, some courts have called the entire doctrine into question. For example, Judge Posner explained that "[t]oday, riddled with exceptions, [*functus officio*] is hanging on by its fingernails and whether it can even be said to exist in labor arbitration is uncertain." *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL-CIO, CLC, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 846 (7th Cir. 1995) (citing *Newman v. Corrado*, 897 F.2d 1579, 1583 (Fed. Cir. 1990); *Red Star Express Lines v. International Brotherhood of Teamsters*, 809 F.2d 103, 106 (1st Cir. 1987); *id.* at 108 (concurring opinion); *Local P–9 v. George A. Hormel & Co.*, 776 F.2d 1393, 1394 n.1 (8th Cir. 1985); *United Steelworkers of America v. Ideal Cement Co.*, 762 F.2d 837, 841 n.3 (10th Cir. 1985); *Industrial Mutual Association, Inc. v. Amalgamated Workers*, 725 F.2d 406, 412 n.3 (6th Cir. 1984)); *see also E. Seaboard Const. Co. v. Gray Const., Inc.*, 553 F.3d 1, 5 (1st Cir. 2008) (citing *La Vale Plaza*, 378 F.2d 569, 570 (3d Cir. 1967)). However, "it has never been abrogated by any court

There are "three recognized exceptions" to the doctrine:

(1) an arbitrator "can correct a mistake which is apparent on the face of [her] award";
(2) "where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted [her] function and it remains open to [her] for subsequent determination"; and
(3) "[w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify."[80]

Verizon argues that the Remedy Award improperly revisited the Merits Award with regard to: 1) "Customer Self-Installation"; 2) "Use of Bargaining Unit Employees to Deliver Set-Top Boxes"; 3) "Customer Deliveries Included in Monetary Award"; 4) "Time Included in Computing Monetary Award"; and 5) "Deliveries Subject to Monetary Award."[81]

   1)  <u>Whether the Remedy Award improperly revisited the Merits Award on the issue of whether customer self-installation was barred by the CBA</u>

The Union's grievance stated that "all work associated with the set top box must be performed by CWA members."[82] The parties agreed that the impartial arbitrator would frame the issue in dispute for arbitration,[83] and Zausner framed the issue as whether Verizon violated the CBA by "implementing a process to deliver set top boxes to existing customers by common carrier for customer self-installation."[84] The Merits Award explicitly determined that "*self-installation* by a customer does not amount to contracting out bargaining unit work."[85] The Panel

---

of which we have been made aware." *Int'l Bhd. of Elec. Workers, Local Union 824 v. Verizon Fla., LLC*, 803 F.3d 1241, 1248 (11th Cir. 2015).

[80] *Brownsville*, 186 F.3d at 331 (quoting *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3d Cir. 1991)).

[81] Verizon's Memorandum of Law in Support of Motion for Summary Judgment [Doc. No. 26-16] at 9.

[82] Merits Award at 2.

[83] *Id.*

[84] *Id.* at 1.

[85] *Id.* at 21 (emphasis added).

concluded that "[t]he grievance is granted. The bargaining unit employees who have been denied the opportunity to perform the *delivery work* in question are entitled to compensation. The Company is directed immediately to cease and desist from *delivery* of set top boxes by anyone other than Local 13000 Bargaining unit members."[86] Thus, the only reasonable reading of the Merits Award limited injunctive relief to the delivery of the boxes.

However, the Remedy Award stated that "[t]he work at issue – that is, the bargaining unit work that Services Technicians were deprived of when Verizon shipped set top boxes to customers – includes delivery of the boxes (unless the customer has obtained one from a Company facility) and installation of set top boxes to be installed or swapped out."[87] The Panel then held that "[e]xcept where a customer has retrieved and delivered the set top box(es) to the premises from a Company location, the Company is ordered to cease and desist from assigning the delivery, installation and maintenance (including swaps and upgrades) of set top boxes . . . by any persons or through any means other than Services Technicians in the CWA Local 13000 bargaining unit."[88]

A conflict exists between the decisions: the Merits Award explicitly held that customer installation did not violate the CBA while the Remedy Award barred such installation unless the customer personally transported the set top box to her home. By its terms, the Merits Award permitted delivery by a Union technician with installation by the customer, while the Remedy Award foreclosed that option.[89] Accordingly, the injunction barring any customer self-installation can only stand if one of the exceptions to *functus officio* applies.

---

[86] *Id.* at 25 (emphasis added).

[87] Remedy Award at 11.

[88] *Id.* at 12.

[89] The Union argues that the Remedy Award did not actually exceed the scope of the Merits Award because the Panel framed the issue in the Merits Award as whether Verizon violated the CBA "by setting up and implementing a

The Union argues that "the Board had every right to exercise its uncontested remedial authority to clarify the holdings in its initial Award, as indeed it was required to fashion a monetary award."[90] According to the Union, when the Remedy Award stated that the "work at issue" included some customer self-installation, the Panel was merely clarifying what it meant in the Merits Award when it stated that "the grievance is granted" as to "the delivery work in question."[91]

However, "[t]he purpose of [the third] exception is to permit the arbitrator to complete an assigned task, and by resolving the ambiguity, the arbitrator is simply completing [her] duties by clarifying [her] reasoning, not reopening the merits of the case."[92] An ambiguity only exists "where an award is subject to at least two interpretations, or where the award fails to take into account circumstances that arise after it has been made."[93] The Merits Award was not ambiguous. The Panel explicitly held that customer self-installation did not violate the CBA and ordered Verizon to cease and desist from all *delivery* by non-Union members but made no mention of customer self-installation.[94] Therefore, because the Merits Award was not subject to

---

process to deliver set top boxes to existing customers by common carrier for customer self-installation," and thus, the issue considered by the arbitrators included the entire "process" of "delivery and concurrent work activities." Union's Brief in Opposition to Verizon's Motion for Summary Judgment [Doc. No. 28] at 8. However, as explained, the Merits Award explicitly held that customer installation did not violate the CBA. The Union also argues that the Merits Award "specifically held that '(t)he record evidence confirms the Union's claim that bargaining members were assigned to deliver the set top boxes that they installed beginning when the service (FiOS) was implemented.'" *Id.* at 9 (quoting Merits Award at 19). However, this holding is not about customer installation.

[90] *Id.* at 10.

[91] *Id.*

[92] *Carlson v. Norwegian Cruise Line Holdings, Ltd.*, No. 2013-115, 2018 WL 3824355, at *8 (D.V.I. Aug. 10, 2018) (quoting *Green v. Ameritech Corp.*, 200 F.3d 967, 977 (6th Cir. 2000)); *see also Matlack*, 118 F.3d at 992 (quoting *La Vale Plaza*, 378 F.2d at 573 (explaining that the third exception applies when the supplemental decision "in no way reopen[s] the merits of the controversy.").

[93] *Pittsburgh Metro Area Postal Workers' Union, AFL-CIO v. U.S. Postal Serv.*, No. CIV.A. 07-00781, 2008 WL 1775502, at *11 (W.D. Pa. Apr. 16, 2008) (citation omitted).

[94] Indeed, the Merits Award stated that "[t]he Company's focus on customer self-installation of the set top boxes is misplaced. The Union's focus is on the delivery of set top boxes to existing customers by common carrier." Merits Award at 21.

two interpretations, the Remedy Award's order regarding customer self-installation was improper and must be vacated.[95]

> 2)  Whether the Remedy Award improperly revisited the Merits Award on the issue of which members of the bargaining unit could deliver set top boxes

The Merits Award ordered that "[t]he Company is directed immediately to cease and desist from delivery of set top boxes by anyone other than Local 13000 bargaining unit members."[96] Immediately after the decision was issued, the parties disputed what it required. Verizon asserted that the Merits Award only demanded that members of the bargaining unit deliver the set top boxes—allowing them to create a new lower-paid position of Assistant Technician tasked with delivery—while the Union asserted that delivery had to be returned specifically to the Service Technicians. The Remedy Award explained that "[t]he Company['s] premise, that it has 'complied fully with the Panel's major injunction' misstates the terms of award. Given that specific employees, Services Technicians, lost work to which they were entitled to under the Contract . . . the Company's use of Assistant Technicians . . . does not resolve the issue. The work belonged to Services Technicians."[97] Verizon argues that the doctrine of *functus officio* barred the requirement in the Remedy Award that only Service Technicians could perform deliveries while the Union argues that the Remedy Award merely clarified the Merits Award.

---

[95] The Union does not appear to argue that either of the first two exceptions to *functus officio* apply here, and they do not apply because the Remedy Award was not correcting "a mistake apparent on the face of the award" such as a "clerical mistake[] or [an] obvious error[] of arithmetic computation," and the arbitrator did resolve the issue of which aspects of Verizon's operation violated the CBA—the only issue left open was the remedy. *Matlack*, 118 F.3d at 992.

[96] Merits Award at 25.

[97] Remedy Award at 11.

In this regard, the Merits Award was "subject to at least two interpretations."[98] In Verizon's view, the violation of the CBA lay in its outsourcing of delivery to non-Union members, and the Merits Award therefore only required that it use any Union member to deliver the set top boxes. The Union advances the equally plausible interpretation that the Merits Award required Verizon to return delivery to the category of workers who had performed delivery prior to Verizon's violation of the CBA, the Service Technicians. The Merits Award explained that Service Technicians had always delivered set top boxes to customer homes.[99] Because the position of Assistant Technician was created after the Merits Award was issued, there was no need for the Merits Award to explicitly state that only Service Technicians could deliver set top boxes. Therefore, the Panel was entitled to clarify this ambiguity in the Remedy Award.[100]

> 3) <u>Whether the Remedy Award improperly revisited the Merits Award on the issue of whether deliveries to both existing and new customers would be included in the calculation of the remedy</u>

Verizon argues that the Remedy Award improperly expanded the Merits Award to include "shipments to *new* customers, as opposed to only shipments to preexisting customers who wanted to swap or upgrade a set top box."[101] As framed by Zausner, the issue was: "Did the Company violate [the CBA] by setting up and implementing a process to deliver set top boxes to existing customers by common carrier . . ."[102] The Merits Award explained that it could not calculate a remedy because "[t]here is no record evidence by which to assess how often the Company sent out set top boxes to existing customers who wanted a different box that they did

---

[98] *Pittsburgh Metro Area Postal Workers' Union*, 2008 WL 1775502, at *11 (citation omitted).

[99] *See* Merits Award at 19–20, 23.

[100] *See Local 825, 825A, 825B, 825C, 825D, 825R, & 825RH of Int'l Union of Operating Engineers v. Tuckahoe Sand & Gravel*, No. 06-4784, 2007 WL 1797657, at *8 (D.N.J. June 20, 2007).

[101] Verizon's Memorandum of Law in Support of Motion for Summary Judgment [Doc. No. 26-16] at 11.

[102] Merits Award at 1.

not want to install themselves."[103] In the Remedy Award, however, Verizon was directed to provide compensation based on "the number of set top box shipments and deliveries to Pennsylvania customers . . . from the date of the grievance until the Company returns the disputed work to the bargaining unit Service Technicians."[104]

Because the issue had been limited to existing customers, the Remedy Award improperly expanded the remedy to encompass both existing and new customers in contravention of the *functus officio* doctrine.

      4)  <u>Whether the Remedy Award impermissibly revisited the Merits Award on the issue of whether customer self-installation time would be included in the calculation of the remedy</u>

As explained above, the Remedy Award held that the "work at issue . . . includes delivery of boxes (unless the customer has obtained one from a Company facility) and installation of the set top boxes to be installed or swapped out."[105] Thus, the Remedy Award issued a monetary remedy based on "the number of set top box shipments and deliveries to Pennsylvania customers (other than by customers themselves, and including deliveries made by Assistant Technicians) . . ."[106] Verizon made at least 1,069,964 improper deliveries of 1,373,486 set top boxes to Pennsylvania customers between 2008 and 2017.[107] The Panel credited testimony that it took two hours to deliver and install each set top box, and therefore awarded a remedy "at the

---

[103] *Id.* at 24. Because the Panel retained jurisdiction for this limited issue, the second exception to *functus officio* only applied to the assessment of how many set top boxes Verizon delivered to customers who wanted a different box but did not want to self-install. This exception did not allow the Panel to revisit its decision to frame the issue, and base its award, on deliveries to existing employees.

[104] Remedy Award at 12–13.

[105] Remedy Award at 11.

[106] *Id.* at 12.

[107] *Id.* at 13.

straight time rate of two hours per delivery at the top step wage rate."[108] However, Verizon argues that the *functus officio* doctrine barred the Panel from including installation time from all 1,373,486 installations in the remedy because, in the Merits Award, the Panel held that customer self-installation did not violate the CBA. The Court agrees. Once the Panel held that customer self-installation did not violate the CBA, it could not revisit that decision and include that time in the remedy.[109]

<ol start="5" style="list-style-type: decimal;">
<li>Whether the Remedy Award improperly revisited the issue of whether the remedy would be calculated based only on deliveries to customers who ultimately had a technician perform installation or all deliveries, including those where the customer self-installed</li>
</ol>

Verizon asserts that the Merits Award specified that the remedy would be calculated based on "existing customers who . . . did not want to install [a set top box] themselves"[110] while the Remedy Award was based on all "deliveries to Pennsylvania customers,"[111] rendering the Remedy Award's inclusion of time for deliveries to customers who self-installed the set top box a violation of the *functus officio* doctrine.

There is ample support for Verizon's interpretation of the Merits Award. The Panel summarized an earlier arbitration decision interpreting Section 17.01 which held that "with respect to the alleged 'contracting out' to the postal service, the majority of the Board is of the view that the delivery of cords was merely incidental to the installation, and as the Company is no longer routinely engaged in installing these cords, it is under no obligation to use bargaining

---

[108] *See id.* at 5, 13.

[109] Regardless, such an award constitutes invalid punitive damages because there is no causal relationship between Verizon's breach of the CBA—which the Merits Award determined did not include customer self-installation—and awarding a monetary remedy for the time that customers self-installed set top boxes. *See Georgia Power*, 995 F.2d at 1032 (citing *Desert Palace*, 679 F.2d at 794).

[110] Merits Award at 24.

[111] Remedy Award at 12.

unit personnel to deliver them."[112] The Panel explicitly differentiated that decision, explaining that "[t]he latter point does not apply here because Company technicians continue to install some of the set top boxes rented out to customers. The Company is still having technicians install set top boxes. *When that occurs, delivery of a box is not incidental.*"[113] Moreover, the Panel stated that "the Company must cease and desist from mailing the product to customers *when the Company is to provide the installation or maintenance on a set top box.*"[114]

At the same time, the Merits Award held that "[t]he function of delivery is part of the job"[115] and explained that "mailing set top boxes is different from the customer picking up the set top box from a Company location because the customer is not a contractor . . . employees of other employers who do the delivery work as part of their jobs, are getting the advantage of work that is protected by Section 17.01."[116] Moreover, in the Award section of the Merits Award, the Panel ordered that "[t]he Company is directed immediately to cease and desist from delivery of set top boxes by anyone other than Local 13000 bargaining unit members"—the injunction was not limited as to the deliveries.[117]

The Merits Award is undoubtedly ambiguous, if not outright contradictory.[118] While the injunction indicates that all delivery—whether or not the customer self-installed—was covered by the CBA, some of the reasoning and language in the decision limits violations of the CBA to

---

[112] Merits Award at 22 (quoting Case No. 14300 1878 79 (Strongin, 1980)).

[113] *Id.* (emphasis added).

[114] *Id.* at 24 (emphasis added).

[115] *Id.* at 23.

[116] *Id.* at 24.

[117] *Id.* at 25.

[118] The Merits Award states that Verizon must "cease and desist . . ." twice. The first time, as quoted above, Verizon was ordered to cease and desist from deliveries when it was to provide installation or maintenance while the second time, in the Award section, the cease and desist is not limited in this way.

delivery where a Service Technician performs the installation. In the Remedy Award, the Panel cleared up the ambiguity and unequivocally held that all deliveries were bargaining unit work and that the remedy was based on all deliveries. Considering the ambiguity in the Merits Award, the Panel's clarification in the Remedy Award that the Union would be compensated for all deliveries performed by common carriers was not improper.

## IV.    CONCLUSION

For the foregoing reasons, the arbitration award in this matter is confirmed in part and vacated in part. Specifically, the Merits Award is confirmed and the Remedy Award is vacated. This matter is remanded for calculation of a remedy consistent with this opinion and shall be arbitrated before the arbitration panel.